# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

JOSEPH TAYLOR (# 37386)                                    PLAINTIFF

v.                                                         No. 4:06CV81-D-S

NURSE VICKY, ET AL.                                        DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Joseph Taylor,

who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of

the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed

this suit. The sole remaining defendant, Nurse Sue Ridinger, moved for summary judgment on

July 28, 2010. The plaintiff has responded to the motion, the defendant has replied, and the

matter is ripe for resolution. For the reasons set forth below, the defendant's motion will be

granted, judgment will be entered for the defendant.

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." FED. R. CIV. P. 56(c). "The moving party must show that if the evidentiary

material of record were reduced to admissible evidence in court, it would be insufficient to

permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*,

204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert.*

*denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the

burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck,* 204 F.3d at 633; *Allen v. Rapides Parish School Bd.,* 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company,* 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson,* 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.,* at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex,* 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl,* 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen,* 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.,* 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper,* 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.,* 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little,* 37 F.3d at 1075 (emphasis omitted).

## Undisputed Material Facts[1]

At about noon on July 30, 2005, inmate Joseph Taylor's finger was caught in a cell door when it closed. At approximately 12:15 p.m., Taylor was taken from his cell block to the Unit 29 holding tank. At 12:59 p.m., defendant Sue Ridinger entered the Unit 29 clinic.

Sue Ridinger examined Taylor's finger and determined that he needed care beyond her ability to provide, so she called Transportation at the emergency room at Unit 42 and asked for someone to come to Unit 29 to pick up Taylor. At approximately 2:10 p.m., two correctional officers took Taylor from Unit 29 and transported him to the emergency room at Unit 42.

Dr. Myung Kim was the physician on duty at the emergency room. Dr. Kim examined the finger, tried to suture it, but the bleeding continued and she determined that a surgeon's care was needed. Dr. Kim first tried to contact Dr. Black at Bolivar Medical Center, but he was not available. She next called Central Mississippi Medical Center, but no surgeon was available. She called the University of Mississippi Medical Center and was told they could not accept Taylor. Finally, she located Dr. Wright at Bolivar Medical Center and he agreed to accept Taylor as his patient.

At approximately 7:00 p.m., two security officers, a registered nurse, and Taylor left the emergency room at Unit 42 *en route* to the Bolivar Medical Center in Cleveland, Mississippi.

---

[1]These facts are supported by admissible evidence in the record. As discussed below, the only evidence to the contrary is hearsay suggested in Joseph Taylor's pleadings, which is not admissible and thus not proper proof for the court to consider on summary judgment.

Bolivar Medical Center records show that Joseph Taylor was examined by the medical staff at 8:04 p.m. on July 30, 2005. Dr. Wright examined the finger, re-dressed it, and scheduled surgery for the following morning. At approximately 9:00 p.m., the correctional officials from MDOC released Taylor to the security personnel at Bolivar Medical Center.

On July 31, 2005, Dr. Wright performed surgery and amputated the tip end of Joseph Taylor's left index finger. The specimen amputated measured 2 cm. x 1.5 cm. x .07 cm (which in inches is 0.8" x 0.6" x 0.3".)

On July 31, 2005, at 3:35 p.m., Joseph Taylor was discharged from Bolivar Medical Center. Upon his return to Parchman, Taylor was admitted to the hospital, where he remained until his discharge on September 2, 2005.

The MDOC medical records produced by Defendant Ridinger identified RN Grayer and RN Cross as the two registered nurses who worked at Unit 42 at the time of the incident. [see #94-1 at 11]. Defendant Ridinger's affidavit identifies RN Grayer as the registered nurse who worked with Defendant Ridinger at Unit 42. [see #94-4 at 3]. Thus, either Nurse Grayer or Nurse Cross was the nurse Taylor has identified as "Vickey Doe." Both Nurse Grayer and Nurse Cross submitted affidavits in this matter establishing that neither nurse saw defendant Sue Ridinger stop or prevent Joseph Taylor from being transported to the prison hospital. Likewise, neither nurse told any person that Sue Ridinger had done so.

Dr. Myung Kim was the physician on duty at the emergency room at Unit 42 on July 30, 2005. Dr. Kim retired in March, 2010, after serving twenty years at the medical

department at Parchman. (Exhibit "III"). Dr. Kim submitted an affidavit regarding the treatment of Joseph Taylor after the accident with his finger. The affidavit establishes the following facts. Nurse Ridinger had no authority to stop transportation personnel from picking up Joseph Taylor after a call had been made to transport him to the emergency room, and, indeed could not stop Taylor from being transported. (Defendant's Exhibit "III"). Dr. Kim never heard anyone say that Sue Ridinger interfered with, stopped or delayed Joseph Taylor's transport from Unit 29 to unit 42 (Defendant's Exhibit "III"). Similarly, Dr. Kim never told anyone that Sue Ridinger had stopped or prevented Taylor's transport to the prison hospital. Furthermore, the door completely crushed and cut off the tip of Taylor's finger – and damaged the tissue so badly that the severed part could not be reconnected. (Defendant's Exhibit "III").

### Inadmissible Hearsay Evidence in Support of Joseph Taylor's Claims

On pages seven and eight of his complaint Taylor alleges that an unidentified nurse told Corrections Officer Walker that Sue Ridinger had stopped security from picking Taylor up. On page nine, Taylor alleges that Corrections Officers James and Cannon told him that Sue Ridinger had stopped the ambulance from picking him up earlier. These are out-of-court statements used to prove the truth of the matter asserted; as such, the statements constitute hearsay and cannot be used to support the plaintiff's claim during consideration of the summary judgment motion. FED. R. EV. 801(c), 802; *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)).

Taylor alleges that Sue Ridinger knew about his injury at 12:00 noon before she went to Unit 32. This allegation is based on Taylor's claim that Nurse "Vickey Doe" told Ridinger about

-5-

the injury after Nurse Vickey Doe received the call from the officer who reported the injury and requested transportation. [#112 at 3]. Joseph Taylor cites no evidence to support this claim; he simply implies that it is based on statements Nurse Vickey Doe told to someone else who, in turn, told Taylor. [#112 at 3]. Taylor's allegation is based on a statement from another person and is thus hearsay[2] because Taylor has used the statement to prove that Sue Ridinger knew about the injury at a specific time. FED. R. EV. 801(c). The evidence is therefore inadmissible. FED. R. EV. 802.

Taylor also alleges that Nurse Vickey Doe told Dr. Kim that Sue Ridinger stopped the ambulance from picking him up. [#112 at 3]. This alleged statement by Nurse Vickey Doe is hearsay evidence and inadmissible because Taylor offers it to show Defendant Ridinger cancelled the ambulance and thereby interfered with his treatment. FED. R. EV. 801(c), 802.

In addition, Taylor alleges that Officer Walker twice called Unit 42 to ask when Taylor would be transported to the hospital. Joseph Taylor also alleges that Officer Walker told him that Sue Ridinger knew about Taylor's injury before she went to Unit 32. [#112 at 4]. This evidence is based upon Officer Walker's statements, which in turn are based upon another person's statements. Taylor offers the first statement by Officer Walker to prove that Walker twice called the hospital. Then Taylor uses the second statement prove that Sue Ridinger knew about Taylor's injury before she went to Unit 32. Both are hearsay because they are out-of-court statements made by another person which Taylor offers to prove the

_____

[2]Indeed, the multiple people between the original speaker and Taylor constitute hearsay within hearsay.

matter he attributes to Officer Walker.[3] FED. R. EV. 801(c). Since both statements are hearsay, they are both inadmissible. FED. R. EV. 802.

Other than these inadmissible statements, Taylor has presented no proof to support his allegations against defendant Sue Ridinger.

## Denial of Medical Treatment

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may knowledge of substantial risk of serious harm be inferred by a court from the obviousness of the substantial risk. *Id.* Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct.

---

[3]Again, the multiple speakers between the original speaker and the person to offer proof in court constitute hearsay within hearsay.

662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). In cases such as the one at bar, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S.D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

### Taylor Has Presented No Admissible Evidence to Support His Claims

The undisputed admissible evidence in the record shows that the only harm Joseph Taylor suffered was the injury to the tip of his finger when the cell door closed on it. There is simply no admissible evidence Taylor suffered other harm, from either Nurse Ridinger or anyone else. All of Taylor's allegations regarding Sue Ridinger's alleged delay of his treatment are based upon hearsay. In addition, Taylor has alleged, without support, that a delay in his treatment led to a worsening of the condition of his finger such that it had to be amputated. As discussed below, Taylor's claims must fail.

### No Proof of Causation

Two hours and fifteen minutes passed between the time of Taylor's injury at 11:55 a.m. and the time of his departure from Unit 29 to the emergency room at Unit 42 at 2:10 p.m. However, nearly five hours lapsed between Taylor's arrival at Unit 42 and his departure at 7:00 p.m. from the emergency room en route to the Bolivar Medical Center. Taylor has not alleged

that Sue Ridinger caused this later delay. Had a delay in treatment caused Taylor harm, clearly the delay between his arrival at the emergency room and his departure for the hospital (about five hours) was the cause – not the much shorter delay between the time of his injury and his departure for Unit 42 (about two hours).

In any event, to prove that a delay caused him substantial harm, Taylor must produce some medical evidence to support causation. There is no such evidence in the record. Dr. Wright has not stated that the tip of Taylor's finger could have been saved had he received treatment within six hours of injury. Indeed, Dr. Kim stated through her affidavit that Taylor's finger was so badly injured that it simply could not have been reattached. In any event, the medical records do not show that Dr. Wright even considered re-attachment of the detached tip of Taylor's finger. Taylor's claim of denial of adequate medical care must fail for this reason, as well.

### Taylor's Request Under FED. R. CIV. P. 56(f)

Finally, Taylor states that, under FED. R. CIV. P. 56(f), that the court should give him time to identify additional witnesses to enable him to present facts essential to justify his opposition to the present motion for summary judgment.

F.R.C.P. 56f) reads:

> **(f) When Affidavits Are Unavailable.** If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) deny the motion;
>
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
>
> (3) issue any other just order.

First, although Taylor states in his response to the present motion that he has included an affidavit supporting his request under Rule 56(f), no such affidavit was included in the response. Also, Taylor has not specified a reason that he cannot present facts in opposition to summary judgment. Indeed, it appears that the reason for this failure is Taylor's decision not to use the documents available to him to identify and seek discovery regarding potential witnesses.

The defendant provided Taylor with more than 200 pages of documents at various times during this litigation (April 1, 2010; May 5, 2020; June 22, 2010; and July 7, 2010). The following information (contained in those documents) was thus available for Taylor to explore before now:

(1)    The MDOC medical records produced by Defendant Ridinger identified Nurse Grayer and Nurse Cross as the two registered nurses who worked at Unit 42 at the time of the incident. [see #94-1 at 11].

(2)    Sue Ridinger's affidavit identifies Nurse Grayer as the registered nurse who worked with Defendant Ridinger at Unit 42. [see #94-4 at 3].

(3)    Thus, either Nurse Grayer or Nurse Cross is the Nurse "Vickey Doe" Taylor mentions as the alleged source of several facts to support his case.

(4)    The Watch Commander's Log identified officer James Griffin as the person who reported Taylor's injury – and officer Henry James as the person who transported Taylor from Unit 29 to the hospital in Unit 42.

Thus, Joseph Taylor has had at his fingertips the names of these potential witnesses and has not, through legitimate means of discovery[4], obtained additional information about his case. Given this fact – and the fact that Taylor did not include an affidavit to support his request under FED. R. EV. 56(f) – or specific reasons why he could not obtain proof to rebut that Ridinger has offered in her motion for summary judgment – the court will deny Taylor's request.

## Conclusion

In sum, there is no admissible evidence in the record to support Taylor's claims against Nurse Sue Ridinger. In addition, even if the court considered the inadmissible evidence (all of which relates to Sue Ridinger's alleged delay of Taylor's medical treatment), the medical records do not show that Taylor suffered any harm, much less substantial harm, as a result of the two-hour delay between the time he was injured and the time he was transported to Unit 42. For these reasons, the defendant's motion for summary judgment will be granted, and judgment will be entered for the defendant. A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED**, this the _29_ day of December, 2010.

/s/ Glen H. Davidson
SENIOR JUDGE

---

[4]On May 27, 2010, Taylor sought to propound requests for admissions and interrogatories upon various prison guards. The court denied this motion, however, because neither of these forms of discovery may be propounded upon those who are not parties to the litigation.